

AO 106 (REV #10) Affidavit for Search Warrant

AUSA Elie Zenner, (312) 697-4032

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

Information associated with the cellular telephone towers described in Attachment A stored at premises controlled by Sprint/Nextel, Verizon, T-Mobile, and AT&T, as further described in Attachment A

Case No. 22M860

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Dustin Gourley, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A.** The Court has the authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A)

located in the Northern District of Illinois, there is now concealed:

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is evidence of a crime.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2119, 924(c), and 1951 | carjackings, armed robberies, and firearms offenses |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

/s/ Dustin Gourley

*Applicant's Signature*

DUSTIN GOURLEY, Special Agent
Federal Bureau of Investigation

*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: November 2, 2022          11:15am

*Judge's signature*

City and State: Chicago, Illinois

JEFFREY COLE, U.S. Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                          )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Dustin Gourley, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately April 2012.

2.      I am currently assigned to the FBI's Violent Crimes Task Force, and my responsibilities include the investigation of violent crimes, including kidnapping, bank robbery, violations of the Hobbs Act, federal carjacking violations, federal firearms violations, and the apprehension of violent fugitives. I have participated in the execution of multiple federal search warrants, including search warrants pertaining to cell tower locations.

3.      I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that are in the possession, custody, and/or control of: **AT&T**, a cellular service provider headquartered in Dallas, Texas; **Sprint/Nextel**, a cellular service provider headquartered in Overland Park, Kansas, **Verizon Wireless**, a cellular service provider headquartered in New York, New York; and **T-Mobile USA**, a cellular services provider headquartered in Bellevue, Washington (the "Service Providers"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the **Service Providers** to disclose to the

government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4.      The information in this Affidavit is based on my own observations and actions, information received from other law enforcement agents, which includes interviews of witnesses, my training and experience, and the experience of other agents.

5.      This affidavit is submitted for the limited purposes of establishing that there is probable cause to believe the records and other information described in Part II of Attachment A to the Proposed Warrant and Order will constitute or lead to evidence or instrumentalities concerning carjackings, armed robberies, and firearm offenses, in violation of Title 18, United States Code, Sections 2119, 924(c), and 1951 ("**the Subject Offenses**").

6.      Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation.  I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of the **Subject Offenses** have been, are being, or will be committed.

7.      Cell tower information, as described in Attachment B, will likely constitute evidence of the **Subject Offenses**, as it will assist law enforcement in identifying the cellular devices active and present in the area of the **Subject**

**Offenses** at or around the time of its commission. In turn, by cross referencing cellular devices that were active and present in all of these areas, this evidence can be used by law enforcement to identify potential subjects.

## I. PROBABLE CAUSE

### *Summary of Probable Cause*

8.     In summary, and as more fully described below, the FBI, along with the Chicago Police Department, are investigating a series of violent crimes that appeared to be conducted by the same group of offenders. The FBI has identified multiple aggravated vehicular hijackings, attempted vehicular hijackings, and armed robberies that appeared to be committed by the same group of offenders on September 28 and September 29.

9.     As discussed below, the FBI believes it is the same group of offenders based on descriptions provided by the victims of the **Subject Offenses**, modus operandi, timing of the offenses, vehicles utilized, review of surveillance video, review of body worn camera footage, and recovery of multiple items of evidence that link the **Subject Offenses**. For example, two of the suspected offenders were arrested on September 29, 2022 after running away from a vehicle that had recently been carjacked. One of the offenders had proceeds from a recent armed robbery in his pockets and other proceeds were found in the vehicle. The offenders match the appearance of the armed robbers on surveillance video and the description provided by the victims.

10.     The government seeks cellular tower information for the times and locations of the armed robberies and carjackings (collectively, "the **Subject Offenses**"). More specifically, the **Subject Offenses** occurred as detailed below:

a.      On September 28, 2022, between 12:35 a.m. and 1:05 a.m. (Central Daylight Time), a carjacking occurred in the area of 855 West Erie, Chicago, Illinois;

b.      On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), a carjacking occurred in the area of 1211 West Cornelia, Chicago, Illinois;

c.      On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), a carjacking occurred in the area of 1155 North California, Chicago, Illinois;

d.      On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), an attempted carjacking occurred in the area of 2800 North Kimball, Chicago, Illinois;

e.      On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), a carjacking occurred in the area of 1402 North Western, Chicago, Illinois;

f.      On September 29, 2022, between 10:50 p.m. and 11:20 p.m. (Central Daylight Time), an attempted carjacking occurred in the area of 224 North Racine, Chicago, Illinois;

g.    On September 28, 2022, between 11:15 p.m. and 11:45 p.m. (Central Daylight Time), a carjacking occurred in the area of 1405 West Erie, Chicago, Illinois;

h.    On September 28, 2022, between 11:50 p.m. and 12:10 a.m. (Central Daylight Time), an armed robbery occurred in the area of 2632 West Lawrence, Chicago, Illinois;

i.    On September 29, 2022, between 11:55 p.m. and 12:25 a.m. (Central Daylight Time), an armed robbery occurred in the area of 4639 North Rockwell, Chicago, Illinois;

j.    On September 29, 2022, between 12:00 a.m. and 12:30 a.m. (Central Daylight Time), an armed robbery of a 7-11 store occurred at 2900 West Montrose, Chicago, Illinois;

k.    On September 29, 2022, between 12:30 a.m. and 1:00 a.m. (Central Daylight Time), a foot chase occurred with the occupants of a vehicle taken in a carjacking, leading to the arrest of two offenders and the recovery of two firearms in the area of 3810 West Monroe, Chicago, Illinois; (collectively, the "**Subject Locations**").

11.    Based on the investigation to date, the FBI believes that the same group of offenders conducted the **Subject Offenses**.

### *Carjacking #1: September 28, 2022 at about 12:53 a.m. at 855 West Erie*

12.    On September 28, 2022, at approximately 12:53 a.m., a carjacking occurred in the area of 855 West Erie, Chicago, IL. The victims (Victim A and Victim

B) reported to law enforcement that three unknown African-American males approached with firearms drawn and pointed at the victims and told Victims A and B to get out of the vehicle and be quiet. The offenders entered the vehicle, a 2021 Honda Passport bearing California plate 8WIE717 ("Stolen Vehicle 1") and departed the area.

13. During the incident, the offenders also took Victim B's firearm, a Smith & Wesson 9mm handgun bearing serial number NKC2757 ("Victim B's Firearm"), which was located in the glove compartment of Stolen Vehicle 1.

14. Stolen Vehicle 1 was later recovered by law enforcement in the area of 425 South Drake, Chicago, IL.

### Carjacking #2: September 28, 2022 at about 2:13 a.m. at 1211 West Cornelia

15. On September 28, 2022, at approximately 2:13 a.m., a carjacking occurred in the area of 1211 West Cornelia, Chicago, IL. According to Google Maps and my knowledge and experience, 1211 West Cornelia is about 4.4 miles and about a 15-minute drive from 855 West Erie, the location of Carjacking #1. The victims (Victim C and Victim D) reported to law enforcement that three unknown African-American males approached with firearms drawn and pointed at the victims, and demanded the vehicle along with their cell phones.

16. The offenders entered Victim C's vehicle, a 2019 Ford Fusion bearing Illinois plate CG17679 (Stolen Vehicle 2) and departed the area westbound on Cornelia.

17.     At approximately 2:14 a.m.., Stolen Vehicle 2 was observed on Police Observation Device ("POD") cameras traveling southbound at 3506 Clark Street, Chicago, IL. Subsequently, at approximately 2:19 a.m., Stolen Vehicle 2 was observed on POD camera at approximately 1219 North California, Chicago, IL, in the area of the next reported vehicular hijacking.

18.     Stolen Vehicle 2 was later recovered by law enforcement in the area of 405 Central Park, Chicago, IL. This location was less than two blocks from the location where Stolen Vehicle 1 was recovered at 425 South Drake, Chicago, IL.

### Carjacking #3: September 28, 2022 at about 2:20 a.m. at about 1155 North California Avenue

19.     On September 28, 2022, at approximately 2:20 a.m., a carjacking occurred in the area of 1155 North California, Chicago, IL. The victims (Victim E and Victim F) told law enforcement that two unknown African-American males approached their vehicle, displayed what appeared to be firearms, and said something to the effect of "get the fuck out." The Victims exited their vehicle.

20.     The offenders departed the area in the vehicle, a Nissan Maxima bearing Illinois plate Z610898 (Stolen Vehicle 3). The Victims observed an SUV following Stolen Vehicle 3 as it departed the area. Stolen Vehicle 1, the Honda Passport, is an SUV.

21.     Law enforcement observed on POD cameras Stolen Vehicle 2 and Stolen Vehicle 3 both driving at 2833 West Division, Chicago, IL at approximately 2:21 a.m., less than a block from the scene of the carjacking on California Avenue. Stolen Vehicle

2 and Stolen Vehicle 3 continued westbound on Division until they were observed on POD cameras traveling southbound on Homan Avenue at approximately 2:22 a.m.

22.　Stolen Vehicle 3 was later recovered at the same time/location as Stolen Vehicle 2, at 405 North Central Park, Chicago, IL. Stolen Vehicles 1, 2, and 3 were all recovered within two blocks of each other.

### *Carjacking #4: September 28, 2022 at about 3:47 a.m. at about 2800 N. Kimball*

23.　On September 28, 2022, at approximately 3:37 a.m., an attempted carjacking occurred in the area of 2800 North Kimball, Chicago, IL. The victim (Victim G) advised that four unknown African-American males, in a black Honda SUV, stopped behind Victim G. As noted above, Stolen Vehicle 1 is a black Honda Passport SUV.

24.　Victim G related that three of the males exited the vehicle, two with handguns drawn and pointed at the victim, and attempted to steal the victim's vehicle. Specifically, one of the offenders entered Victim G's vehicle, but did not know how to drive a manual transmission, and thus exited the vehicle. All of the offenders then re-entered the black Honda SUV and departed the area southbound on Kimball Avenue.

25.　POD cameras and surveillance cameras from the area of 2800 North Kimball captured the attempted carjacking. The cameras showed a dark Honda SUV pulling up in front of Victim G's car, a white Honda Civic. Three individuals got out of the Honda SUV wearing dark clothing and approached the Civic. All three of the individuals were carrying what appeared to be firearms. After briefly entering the

8

Civic car, the cameras showed the three individuals exiting the Civic and getting back into the dark Honda SUV.

26.     The description and appearance of the dark Honda SUV in which the offenders arrived is similar to Stolen Vehicle 1. At approximately 2:59 a.m., Stolen Vehicle 1 was captured by a license plate reader (LPR) driving northbound at approximately 190/194 at Grand Avenue toward the location of the carjacking at 2800 N. Kimball.

### *Carjacking #5: September 28, 2022 at about 3:55 a.m. at about 1402 N. Western*

27.     On September 28, 2022, at approximately 3:55 a.m., a carjacking occurred in the area of 1402 North Western, Chicago, IL. The victim (Victim H) was an Uber driver, with a passenger (Victim I). Victim H related that a black SUV pulled up alongside Victim H's vehicle, a 2022 Toyota Camry bearing Illinois plate DD82110 (Stolen Vehicle 4), and two unknown African-American males exited, one of whom had a firearm. The offenders ordered Victims H and I to exit the vehicle. Victim H exited the vehicle, along with Victim I. The two offenders entered Stolen Vehicle 4 and departed that area southbound on Western Avenue.

28.     POD cameras captured Stolen Vehicle 4 driving in tandem with a black SUV at approximately 3:55 a.m. at 2357 West Division, Chicago, IL, and continuing westbound on Division until being observed last at approximately 4:01 a.m. at 1159 North Kildare, Chicago, IL.

29.     Stolen Vehicle 4 was later recovered by law enforcement in the area of 4731 West Superior, Chicago, IL.

### *Carjacking #6: September 29, 2022 at about 11:06 p.m. at about 224 N. Racine*

30.     On September 29, 2022, at approximately 11:06 p.m., an attempted carjacking occurred at approximately 224 North Racine, Chicago, IL.

31.     The victim (Victim J) told law enforcement that three to four African-American males approached him on foot and instructed Victim J to exit the vehicle (describe vehicle) while pulling on the door handles. Victim J was able to drive off, but while doing so, one of the offenders broke the passenger window with what appeared to be a firearm.

### *Carjacking #7: September 28, 2022 at about 11:25 p.m. at about 1405 W. Erie*

32.     On September 28, 2022, at approximately 11:25 p.m., a carjacking occurred at approximately 1405 West Erie, Chicago, IL. The victim (Victim K) told law enforcement that he was sitting in his 2021 (black?) Volkswagen Tiguan (Stolen Vehicle 5) bearing Illinois plate CW49656, with his child in the backseat, when three African-American males wearing all black/black ski masks approached and stated something to the effect of "Get the Fuck out of the car." All the offenders were displaying handguns.

33.     Victim K exited the vehicle and removed his child from the backseat. The offenders took Victim K's firearm, a black HK VP9SK, 9mm bearing serial #232-054224 that is registered to Victim K, from his waistband.

34.     LPR captured Stolen Vehicle 5 on I-290 at Leavitt Street at about 11:30 p.m. on September 28. LPR next captured Stolen Vehicle 5 heading west on I-290 at

Kedzie at 11:31 p.m. and then east on I-290 at Kedzie toward the City and 90/94 at 11:53 p.m. LPRs then show Stolen Vehicle 5 at 11:57 p.m. on I-94 north at Grand Avenue.

### Armed Robbery #1: September 29, 2022 at about 12:05 a.m. at about 2632 W. Lawrence

35.    On September 29, 2022, at approximately 12:05 a.m., an armed robbery occurred in the area of 2632 West Lawrence, Chicago, IL. This location is about a 10-minute drive from the location on I-94 where Stolen Vehicle 5 was last captured by LPRs.

36.    The victim (Victim L) related that he was attempting to unlock a Divvy bike when an African-American male exited a black SUV occupied by additional offenders and robbed him. The male displayed a silver handgun and reached into Victim L's pockets to take his cell phone, wallet, and keys.

37.    Nearby surveillance videos showed a black SUV parked near Lawrence Avenue and Washtenaw Avenue at about 12:05 a.m. The video showed a person, who matches the appearance of Victim L, being dragged by a man wearing all dark clothing. The video shows additional occupants in or near the black SUV that appears similar to Stolen Vehicle 5.

### Armed Robbery #2: September 29, 2022 at about 12:10 a.m. at about 4639 N. Rockwell

38.    On September 29, 2022, at approximately 12:10 a.m., an armed robbery occurred in the area of 4639 North Rockwell, Chicago, IL. This robbery occurred

approximately 5 minutes after the above-described robbery at 2632 W. Lawrence, and approximately 3 blocks or 0.3 miles away.

39.    The victim (Victim M) related that a black SUV stopped as he was walking, and three unknown African-American males exited. One of the males pointed a silver handgun at Victim M. Victim M laid on the ground, and the offenders stole a dark backpack (the "Stolen Backpack") containing miscellaneous items.

### Armed Robbery #3: September 29, 2022 at about 12:15 a.m. at about 2900 W. Montrose

40.    On September 29, 2022, at approximately 12:15 a.m., an armed robbery of a 7-Eleven occurred at 2900 West Montrose, Chicago, IL.

41.    This robbery occurred approximately 5 minutes after the above-described robbery at 4639 N. Rockwell, which is approximately 0.7 miles away.

42.    Responding officers met with the cashier, Victim M, who reported that at approximately 12:15 a.m., three black males parked in front of the store in a black SUV. The robbers entered the store and grabbed assorted liquor bottles and cigarettes from the shelves. One of the males was carrying a firearm and pointed it at Victim M instructing Victim M to open the cash register. The three males also removed cash from the cash register along with a tracking device with the money. Victim M reported that the male carrying a firearm struck him with the gun on the back of the head.

43.    Surveillance video from 7-Eleven corroborated Victim M's account. It showed a black SUV backing into a parking spot near the front door at approximately

12:16 a.m. The surveillance video confirmed that this SUV was Stolen Vehicle 5, as shown in the screenshot below:



44.    Surveillance showed three males in dark pants and dark hoodies with masks entering the store. The first male, Subject 1, later identified as Damandre HENLEY, pointed a dark gun at Victim M and forced him into a back room. A screenshot of HENLEY entering the employee area with his gun pointed is below:



45.     The second male, Subject 2, entered and began removing items from the shelves behind the counter. Subject 2 had a mask on his face and was wearing dark gloves that appear to be football or baseball gloves. A screenshot of Subject 2 is below:



46.     The third male, Subject 3, later identified as Dwight HASBERRY, can be identified by his bright blue surgical gloves. HASBERRY put a bag between the entrance doors to keep them open. A screenshot of the robbers entering the store at 12:16 a.m. is below:

15



47. The robbers have at least one dark backpack that matches the appearance of the Stolen Backpack. Surveillance video captured the robbers loading items behind the counter into bags and crates. The surveillance video showed the robbers forcing Victim M around the store with his hands raised. HENLEY forced Victim M to open the cash registers while carrying a firearm in his left hand. Surveillance video screenshots are below:





48.     HENLEY has white writing on the upper back of his black hoodie and a distinct white spot near the toe of this black sneakers. Two surveillance screenshots showing the unique sneakers are below:





49.     At approximately 12:17 a.m., surveillance video showed HASBERRY, wearing blue surgical gloves and with lighter jeans with a red stripe down the side, removing cash from the register and stuffing it in his pockets, while Subject 2 removed items from the shelves and stuffed them into the Stolen Backpack:

19





50. Between approximately 12:18-12:19 a.m., the robbers exited the 7-Eleven carrying many items. HASBERRY, wearing blue surgical gloves, and Subject 2, exited with items and returned to get more items before exiting for good. Surveillance photos are below:



51.     The Stolen Backpack used by the robbers to hold stolen items from the

7 Eleven is captured in the surveillance screenshot below:



52.    HENLEY, who is mostly in a back room with Victim M during the
robbery, exited last with a box of items. As noted above, he appears to have a distinct
white mark near the toe of his black sneakers. This white mark matches the white
mark on HENLEY's shoes once in custody. See screenshots below:



53.     The robbers loaded the items from the 7 Eleven into Stolen Vehicle 5 and departed the store at about 12:19 a.m. A screenshot is below:



24

54.     After exiting the 7-Eleven at 12:19 a.m., at approximately 12:29 a.m., Stolen Vehicle 5 appeared on LPR going southbound on I-94 at Chicago. Based on Google Maps and my knowledge and experience, this is about a 10-minute drive from the 7-Eleven mentioned above. LPR shows Stolen Vehicle 5 taking I-94 to I-290 and heading westbound. It last shows the Stolen Vehicle 5 at 12:39 a.m. near Kedzie on 290.

### *Henley and Hasberry Are Arrested: September 29, 2022, at about 12:44 AM at about 18 S. Hamlin*

55.     After the 7-Eleven robbery, law enforcement began following Stolen Vehicle 5. At approximately 12:44 a.m. on September 29, 2022, several CPD officers were meeting in a parking lot at 3815 W. Madison when they heard over the radio that there was a recent carjacking and that the vehicle involved was being tailed by officers and by a CPD helicopter.

56.     While this information was being relayed over the radio, the officers in the parking lot at 3815 W. Madison observed a black SUV drive through the alley between the 3800 block of Madison and the 3800 block of Monroe. The SUV parked in an empty lot of 3810 West Monroe (a 4-minute drive from Kedzie and 290, where Stolen Vehicle 5 was observed 5 minutes earlier). This SUV was later confirmed to be Stolen Vehicle 5.

57.     Officers observed multiple individuals exit Stolen Vehicle 5. The individuals were wearing dark clothes and masks and were moving quickly northbound through the alley toward Madison and the officers and away from Stolen Vehicle 5. Officers observed one of the individuals with a gun in his hand. A

25

screenshot of one of the officers' body worn camera footage with one of the offenders pictured is below:



58.     When the offenders saw the officers, they started running east through the backyards of the apartment buildings on Hamlin between Monroe and Madison. Another screenshot from BWC is below:



59.    Officers set up a perimeter around the alley and Hamlin and started searching for the individuals that officers observed exit the stolen vehicle. After approximately 2 minutes of searching, officers located two individuals, later identified as HENLEY and HASBERRY, crouched and hiding near the entrance to 18 S. Hamlin, adjacent to the alley where they were observed running. A screenshot of HENLEY and HASBERRY just before being arrested is below. HASBERRY, on the left, is wearing a ski mask, has blue surgical gloves in his hands matching the gloves worn during the 7 Eleven robbery, has lighter jeans matching the jeans worn during the 7 Eleven robbery, and has cash overflowing from his pockets






60.     As officers detained HENLEY and HASBERRY, one of the arresting officers observed a tan handgun in HENLEY's waistband. Law enforcement removed the gun—a Century Arms International, Model TP9, 9 caliber pistol bearing serial number T647221AT05847, from HENLEY's waistband. The gun was reported stolen on December 1, 2021. A screenshot is below of the officer removing the gun with his left hand from HENLEY's waistband:



61. HENLEY was also wearing black gloves, dark pants, a black sweatshirt with white writing on the back, similar to that worn during the 7 Eleven robbery. As noted above, HENLEY was also wearing distinct shoes that matched those worn during the robbery.

62. Officers searched the area for an additional gun and in the backyard of 18 S. Hamlin (the yard the offenders were observed running through to get to their eventual location of arrest), officers found a magazine from a handgun. Officers continued their search and eventually found a Smith & Wesson, M&P Shield, 9ez, 9mm with a blue steel finish bearing serial number NKC2757 discarded among trash

on the stairs to the basement of 18 S. Hamlin. This firearm is Victim B's Firearm, which was stolen in the vehicular hijacking at 855 W. Erie described above. This recovery is captured on body worn camera as shown in the screenshot below:



63.    Officers searched HASBERRY and found $560 in small denominations in his front jean pockets. Officers also found a tracking device among the currency. This tracking device, bearing serial number F05569927N, was assigned to the 7 Eleven at 2900 W. Montrose.

64.    At the time of their arrest, HASBERRY and HENLEY both had cellular telephones in their possession.

65.    After canvassing the area and minutes after arresting HASBERRY and HENLEY, officers returned to Stolen Vehicle 5 in the empty lot at 3810 W. Monroe, the vehicle officers observed HASBERRY and HENLEY exit before they ran. A photo of the vehicle at 3810 W. Monroe is below:



66.     Inside Stolen Vehicle 5, law enforcement found red shopping baskets from the 7 Eleven, alcohol and cigarettes that were stolen in the 7 Eleven robbery, and a dark backpack that matched the appearance and description of the Stolen Backpack from the robbery at 4639 N. Rockwell. Photos of the items found inside Stolen Vehicle 5 are below:









## II.   **PLANNED INVESTIGATION**

67.    Based on my training and experience, as well as the training and experience of other law enforcement agents with whom I have consulted, I have learned the following:

a.    Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device.

b.    In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial

33

Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN'), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

       c.    Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

       d.    Cellular service providers, such as the Service Providers, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time.

e. Information obtained from cellular service providers such as the Service Providers that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred.

68. Based on my training and experience, as well as the training and experience of other law enforcement agents with whom I have consulted, individuals who commit armed robberies often carry wireless devices, such as cellular phones, and commonly make use of the features on the devices before, during, or after the armed robberies.

69. Specifically, this investigation reveals that four different individuals participated in the **Subject Offenses**. During the **Subject Offenses**, the offenders were located in different vehicles. At one point, the offenders were located in three separate vehicles and those vehicles were captured on POD footage and license plate readers in close proximity, suggesting that the offenders were staying in communication to meet up. Further, Stolen Vehicles 1, 2, and 3 were all recovered at or near the same location, again indicating that the offenders were staying in communication to meet up after committing the robberies and hijackings.

70. Additionally, two of the subject offenders, HENLEY and HASBERRY, were in possession of cellular telephones when they were arrested after fleeing from a stolen vehicle and in possession of stolen goods.

71.     Based on this, law enforcement believes the offenders utilized cellular telephones to communication.

72.     Here, the government seeks cellular tower information for the times and locations associated with the **Subject Offenses,** or conduct pertaining to the **Subject Offenses,** specifically:

a.     On September 28, 2022, between 12:35 a.m. and 1:05 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 855 West Erie, Kimball, Chicago, Illinois;

b.     On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1211 West Cornelia, Chicago, Illinois;

c.     On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1155 North California, Chicago, Illinois;

d.     On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), an attempted aggravated vehicular hijacking occurred in the area of 2800 North Kimball, Chicago, Illinois;

e.     On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1402 North Western, Chicago, Illinois;

f. On September 29, 2022, between 10:50 p.m. and 11:20 p.m. (Central Daylight Time), an attempted aggravated vehicular hijacking occurred in the area of 224 North Racine, Chicago, Illinois;

g. On September 28, 2022, between 11:15 p.m. and 11:45 p.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1405 West Erie, Chicago, Illinois;

h. On September 28, 2022, between 11:50 p.m. and 12:10 a.m. (Central Daylight Time), an armed robbery occurred in the area of 2632 West Lawrence, Chicago, Illinois;

i. On September 29, 2022, between 11:55 p.m. and 12:25 a.m. (Central Daylight Time), an armed robbery occurred in the area of 4639 North Rockwell, Chicago, Illinois;

j. On September 29, 2022, between 12:00 a.m. and 12:30 a.m. (Central Daylight Time), an armed robbery occurred at 7-11, located at 2900 West Montrose, Chicago, Illinois;

k. On September 29, 2022, between 12:30 a.m. and 1:00 a.m. (Central Daylight Time), a foot chase occurred with the occupants of a vehicle taken in an aggravated vehicular hijacking, leading to the arrest of two offenders and the recovery of two firearms in the area of 3810 West Monroe, Chicago, Illinois; (collectively, the "**Subject Locations**").

73. Law enforcement plans to use the information requested in the attached Application to identify cellular telephones that were used at the location of the armed

robberies shortly before, during, and shortly after the **Subject Offenses** to assist in identifying the participants. Law enforcement plans to analyze the tower data to identify cellular phones common to the times and areas associated with the **Subject Offenses**. Such commonalities could reveal one or more cellular devices being used by the perpetrators. Subsequent investigation could in turn allow law enforcement to identify the identities of participants and/or co-conspirators in the **Subject Offenses**.

### III.   CONCLUSION

74.     Based on the above facts, there is probable cause to believe that multiple offenders, including HASBERRY and HENLEY, committed the **Subject Offenses** on September 28 and September 29.

75.     Further, based on the coordination between the offenders, who stole multiple vehicles and arrived at the same location to abandon those vehicles, there is probable cause to believe that the offenders were in communication, likely using cellular devices. As such, there is probable cause to believe that the records described in Attachment A would identify wireless devices that were in the areas of the **Subject Offenses** shortly before, during, and shortly after the time those offenses were perpetrated.

76.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c). I further request that the Court direct Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Service Providers, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

FURTHER AFFIANT SAYETH NOT.

/s/ Dustin Gourley
Dustin Gourley
Special Agent
Federal Bureau of Investigation


Sworn to and affirmed by telephone this 2nd day of November, 2022.

Honorable Jeffrey Cole
United States Magistrate Judge
Northern District of Illinois

39

## ATTACHMENT A

### Property to Be Searched

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") nearest to the identified locations below on the identified date and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below:

1.     On September 28, 2022, between 12:35 a.m. and 1:05 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 855 West Erie, Kimball, Chicago, Illinois;

2.     On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1211 West Cornelia, Chicago, Illinois;

3.     On September 28, 2022, between 2:00 a.m. and 2:30 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1155 North California, Chicago, Illinois;

4.     On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), an attempted aggravated vehicular hijacking occurred in the area of 2800 North Kimball, Chicago, Illinois;

5.     On September 28, 2022, between 3:40 a.m. and 4:10 a.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1402 North Western, Chicago, Illinois;

6.      On September 29, 2022, between 10:50 p.m. and 11:20 p.m. (Central Daylight Time), an attempted aggravated vehicular hijacking occurred in the area of 224 North Racine, Chicago, Illinois;

7.      On September 28, 2022, between 11:15 p.m. and 11:45 p.m. (Central Daylight Time), an aggravated vehicular hijacking occurred in the area of 1405 West Erie, Chicago, Illinois;

8.      On September 28, 2022, between 11:50 p.m. and 12:10 a.m. (Central Daylight Time), an armed robbery occurred in the area of 2632 West Lawrence, Chicago, Illinois;

9.      On September 29, 2022, between 11:55 p.m. and 12:25 a.m. (Central Daylight Time), an armed robbery occurred in the area of 4639 North Rockwell, Chicago, Illinois;

10.      On September 29, 2022, between 12:00 a.m. and 12:30 a.m. (Central Daylight Time), an armed robbery occurred at 7-11, located at 2900 West Montrose, Chicago, Illinois;

11.      On September 29, 2022, between 12:30 a.m. and 1:00 a.m. (Central Daylight Time), a foot chase occurred with the occupants of a vehicle taken in an aggravated vehicular hijacking, leading to the arrest of two offenders and the recovery of two firearms in the area of 3810 West Monroe, Chicago, Illinois; (collectively, the "**Subject Locations**").

The following cellular service providers are required to disclose information to the United States pursuant to this warrant:

- AT&T, a cellular service provider headquartered in Dallas, Texas;

- Sprint/Nextel, a cellular service provider headquartered in Overland Park, Kansas;

- Verizon Wireless, a cellular service provider headquartered in New York, New York; and

- T-Mobile USA, a cellular services provider headquartered in Bellevue, Washington.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

For each cell tower described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

a.      the telephone call number and unique identifiers for each wireless device within the vicinity of the three cell towers closest to the locations identified above ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

b.      the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that transmitted a communication to, or to which a communication was transmitted by, the locally served wireless device);

43

c.      the source and destination IP address associated with each data transfer communication;

d.      the date, time, and duration of each communication or data transfer session;

e.      the "sectors" (i.e., the facts of the towers) that received a radio signal from each locally served wireless device; and

f.      the type of the communication transmitted through the tower (such as phone call or text message).

g.      any and all available additional location information for the cell phones utilizing the cell towers, previously described, to include but not limited to include "range to tower" information, GPS, and triangulation information (referred to as Per Call Measurement Data, RTT Data, Timing Advance Data, or Nelos/ LOCDBOR Data) for all telephone numbers and/or electronic devices utilizing the cell towers.

These records should include records about communications that were initiated before or terminated after the timeframes identified in Attachment A if some part of the communication occurred during the relevant timeframes listed in Attachment A.

## II.      Information to be Seized by the Government

All information described in Section I of this Attachment that constitutes evidence of violations of Title 18, United States Code, Section 2119, 924(c), and 1951,

and relates to any devices that utilized towers at two or more locations described in Attachment A during the specified time period.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant